# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

JONATHAN A. SLAIKEU,

                Plaintiff,

      v.

L. DEBOARD, Sgt. Superintendent, *et al.*,

                Defendants.

Case No. 3:23-cv-00118-SLG

## SCREENING ORDER RE FIRST AMENDED COMPLAINT AND EIGHT PENDING MOTIONS

Plaintiff Jonathan Slaikeu initiated this action on May 22, 2023. In his complaint, he alleged two claims. First, he alleged that Sergeant Deboard violated his constitutional rights on or about January 31, 2023 when he stated that Mr. Slaikeu "had to choose either rec or law library or my job."[1] Second, he alleged that Operations Superintendent J. Brown violated his rights by stating that Mr. Slaikeu had to choose between rec and law library; the date for this allegation was on or about January 27, 2023. No other claims or defendants were presented in the complaint. At the time, Mr. Slaikeu was house at the Spring Creek Correctional Center in Seward, Alaska.

Mr. Slaikeu filed two other complaints in 2023 that are relevant here. In

---

[1] Docket 1 at 3.

Case No. 3:23-cv-00052, he alleged four claims. In Claim 1, he alleged that Sergeant McClenahan wrongfully denied him computer access at Spring Creek from October 2022 until January 26, 2023, which caused him to miss deadlines in a civil case he had filed in federal court. In Claim 2, he alleged that Sergeant Deboard violated his civil right to access to the courts on February 29, 2023, when he acknowledged to Mr. Slaikeu that Alaska Department of Corrections (DOC) staff had denied everyone at Spring Creek access to the law library computers from October 2022 through January 26, 2023. In Claim 3, he alleges that James Milburn violated his civil right to due process on February 10, 2023, by denying his appeal of his grievance about the inoperability of the law library computer for over three months. And in Claim 4, he alleges that Superintendent Stanley violated his right to due process on February 15, 2023, by upholding the denial of his grievance appeal.

In a third case that Mr. Slaikeu filed in 2023, Case No. 3:23-cv-00086, he alleged in Claim 1 that on September 7, 2022, Superintendent Milburn and Sgt. Deboard violated Plaintiff's First Amendment rights by denying his grievances, supposedly because they believed he was threatening one of the Spring Creek staff members. In Claim 2, he alleged that from January 31, 2023, to February 23, 2023, CO Milburn, Sgt. Deboard, and Sgt. McClenahan engaged in First Amendment retaliation against Mr. Slaikeu by denying all of his grievances because he supposedly had threatened to stab one of the Spring Creek staff

members.  Similarly, Claim 3 alleges that COs Milburn and McClenahan retaliated against Mr. Slaikeu on February 8, 2023 and February 28, 2023 by keeping Mr. Slaikeu in administrative segregation for nine days without a hearing. And in Claim 4, he alleges that Probation Officer Thompson delayed Mr. Slaikeu's administrative segregation hearing for nine days because the officer did not want to do his job as a probation officer.  Claim 5 alleges that Keith Aki violated Mr. Slaikeu's right to due process when he denied Mr. Slaikeu's stage 3 grievance appeal and agreed with Sgt. Deboard's findings. Claim 6 alleges that Jennifer Winkleman violated Mr. Slaikeu's right to due process when she signed off on Mr. Aki's decision.

All of the events in each complaint occurred when Mr. Slaikeu was housed at Spring Creek Correctional Center.

On October 17, 2023, the Court issued the same Notice of Intent to Dismiss in each of the cases. After screening the three complaints, the Court concluded that Plaintiff had failed to state any viable claims in any of the three cases and that according leave to file an amended complaint in any of the three cases would be futile.  When Mr. Slaikeu did not voluntarily dismiss any of the claims, the Court enter an Order of Dismissal and a Final Judgment in each case on January 8, 2024.

Plaintiff timely appealed each of the dismissals. The Ninth Circuit Court of Appeals issued separate orders in each case on April 22, 2025. The Ninth Circuit dismissed the appeals in both Case No. 3:23-cv-00086 and Case No. 3:23-cv-

00052 as frivolous. But solely as to Case No. 3:23-cv-00118, the Ninth Circuit reversed the Order of Dismissal and held that the district court abused its discretion when it "dismissed Slaikeu's retaliation, access-to-courts, and prisoner recreation claims without allowing leave to amend" and directed the "district court to allow Slaikeu leave to file an amended complaint concerning these claims only."[2]

Mr. Slaikeu then filed a motion seeking clarification of the Ninth Circuit's order. In response, this Court entered an order at Docket 23 that explained that Mr. Slaikeu could file an amended complaint in this action that "attempts to state a claim against Spring Creek Correctional Center employees alleging retaliation, access to courts, and prisoner recreation claims when Mr. Slaikeu was housed at Spring Creek Correctional Center."[3] Further, Mr. Slaikeu was instructed in that order that "[a]n amended complaint must contain separately numbered, clearly identified claims. If handwritten, it must be legible." The order further specified that the "complaint must consist of continuously numbered paragraphs from beginning to end" so that a defendant can admit or deny each specific allegation by paragraph. And the order specified that the amended complaint should be on the Court's form, which was provided to Plaintiff with the order, and has been used by Mr. Slaikeu for many of the civil rights complaints that he has filed in this Court.

Upon review, the First Amended Complaint is deficient and must be

---

[2] Docket 18 at 2.

[3] Docket 23 at 1.

dismissed. It is not on the Court's form; it is not fully legible; it does not contain numbered paragraphs. It does not clearly identify each claim that Mr. Slaikeu is attempting to assert. Most importantly, it attempts to raise an entirely distinct claim that did not even exist when this complaint was filed in May 2023 – that Sgt. Deboard destroyed video of an incident that would have supported Plaintiff's claim of a sexual assault that he alleges occurred against him by prison officials on May 21, 2024—an incident that is the subject of another case that Mr. Slaikeu has brought against correctional officials, Case No. 3:25-cvc-00063.

Mr. Slaikeu is accorded leave to file one more amended complaint in this case within **60 days of the date of this order.** But the Second Amended Complaint must only relate to those claims that the Ninth Circuit instructed that Mr. Slaikeu be accorded leave to amend: that Sergeant Deboard violated Plaintiff's constitutional rights on or about January 31, 2023 when he stated that Mr. Slaikeu "had to choose either rec or law library or my job"[4] and that Operations Superintendent J. Brown violated Plaintiff's rights by stating that Mr. Slaikeu had to choose between rec and law library on or about January 27, 2023. No other claims or defendants should be included in the Second Amended Complaint. The Second Amended Complaint should be on the Court's form; if it is handwritten, it must be legible; it must contain at least one inch of margins all around; it must be

_____

[4] Docket 1 at 3.

numbered by paragraph, with each paragraph containing only one distinct idea. In addition, if Mr. Slaikeu elects to proceed with this case, he must file a renewed Motion for Leave to Proceed without prepayment of the filing fee or pay the full $405 filing fee. Alternatively, Plaintiff may file a Notice of Voluntary Dismissal of this action.

The Court now turns to the pending motions filed by Plaintiff:

1. At Docket 38 is the Motion to Add 10 Calls. This motion is DENIED. First, it is barely legible. Second, to the extent it appears to seek to amend the First Amended Complaint to add a claim that Spring Creek staff improperly recorded Plaintiff's legal calls at some unspecified time in 2022, it is far afield from the library access/ prisoner recreation claims from early 2023 as to which the Ninth Circuit directed that Mr. Slaikeu been permitted to file an amended complaint.

2. At Docket 39 is the Motion to Request to Allow Plaintiff to be Able to Call the Clerks Again. The request is DENIED. On September 20, 2023, the Court informed Plaintiff that repetitive calls to the Court will not expedite Plaintiff's case and unnecessarily expends the Court's limited resources; the Court also strongly cautioned Plaintiff to reconsider his decorum choices.[5] After receiving reports that Plaintiff was continuing to make

---

[5] See, e.g., *Slaikeu v. Anderson, et al.,* Case No. 3:22-cv-00196-JMK, Docket 25 at 8-9 (notifying Plaintiff that repetitive calls to the Court will not expedite Plaintiff's case and unnecessarily expends the Court's limited resources and strongly cautioning Plaintiff to reconsider his decorum

repeated and excessive phone calls to the Clerk's Office, the Court ordered Plaintiff to cease all telephonic communication with the Clerk's Office and only communicate with the Court in writing.[6] Before the Court entered that order, there were multiple calls per day nearly every day from Mr. Slaikeu to Court staff requesting information as to the status of pending orders on his motions. After the Court issued that order, Plaintiff filed a motion to "be allowed to call the Clerk's office without being disrespectful or rude and only with a specific purpose."[7] The Court denied Plaintiff's motion on July 7, 2025.[8] For the same reasons as in the Court's previous orders, Plaintiff may only communicate with the Court in writing. If a motion has been pending in one of Mr. Slaikeu's cases for several months, and Mr. Slaikeu has not received an order from the Court deciding that motion, Mr. Slaikeu may write to the Clerk of Court to inquire as to whether the pending motion is on the presiding judge's motions report. If it is on that report, then the motion will be addressed in due course. And Mr. Slaikeu may write to the Court asking for copies of filings in this case or Court forms.

---

choices).

[6] Docket 23 at 5.

[7] Docket 26 (cleaned up).

[8] Docket 37 (denying seven motions filed by Plaintiff, including a motion to call the Clerk's Office).

3. At Docket 40 is the Motion to let Sharon Gleason Know and this Court About a Terroristic Threat Under the Patriot Act. This is an improper motion and is DENIED for that reason. A motion should ask the Court to enter a specific order; it should not be written simply to inform the Court of information.

4. At Docket 41 is the Motion to Inform Plaintiff and Send Order Out How Much Filing Fee will be Reduced to Since the Waiver Got Granted. The motion is GRANTED to explain the filing fee as follows: the $350 statutory filing fee is never reduced or eliminated for self-represented prisoners filing civil rights actions; rather, the *prepayment* of the filing fee is waived, but the filing fee is collected over time.[9] The Court's $405 filing fee includes a $350 statutory filing fee and a $55 administrative fee. The Court does not collect the $55 administrative fee from prisoners granted a waiver of prepayment of the filing fee. If Plaintiff elects to voluntarily dismiss this case rather than pay the filing fee or file an application to waive prepayment of the filing fee, then an order to collect the filing fee will not be entered. If Plaintiff elects to file a Second Amended Complaint that is accepted after screening with an application to waive prepayment

---

[9] 28 U.S.C. § 1915. *See also* 28 U.S.C. § 1914, Judicial Conference Schedule of Fees at ¶ 14 (The $55 administrative fee for filing a civil action, suit, or proceeding in a district court "does not apply to applications for a writ of habeas corpus or to persons granted in forma pauperis status under 28 U.S.C. § 1915.").

of the filing fee, and the Court grants his renewed application, the Court will enter an order for the collection of the filing fee in "increments" or "installments," until the entire $350 statutory filing fee is paid. That fee is not refundable regardless of the outcome of the action.[10]

5. At Docket 42 is a motion requesting the Court order DOC to transfer Plaintiff to a specific housing unit and to allow him to have seven legal boxes. The motion is DENIED. A motion may only include one request for relief.[11] Further, orders affecting prisoner housing or access to legal materials must comply with statutory requirements, be "narrowly drawn, extend no further than necessary to correct the harm," and use the "least intrusive means."[12] A preliminary injunction is "an extraordinary remedy never awarded as of right."[13] To obtain preliminary injunctive relief, a party must, at a minimum, establish a likelihood of success on the merits.[14] Here, the Court has dismissed the First Amended Complaint, so Plaintiff does not have a cognizable legal claim upon which preliminary

---

[10] 28 U.S.C. §§ 1915(e)(2).

[11] Local Civil Rule 7.1; *see also* Local Civil Rule 5.1(f)(2).

[12] 18 U.S.C. § 3626(a)(1).

[13] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

[14] *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011). *See also Winter*, 555 U.S. at 20 ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.").

relief could be based.

6. At Docket 43 is the Motion to Inform Sharon L. Gleason of an Inmate Working for the Correctional Employees. This is another improper motion and is DENIED for that reason. A motion should ask the Court to enter a specific order; it should not be written simply to inform the Court of information.

7. At Docket 44 is a motion to "clarify even more intricately how I may amend my complaint." But in the proposed order with that motion,[15] Plaintiff seeks to add additional defendants to this case. The motion is GRANTED in part to the extent the Court has provided further information in this order. The Court has also previously provided Plaintiff with statements of deficiencies and specific instructions on how to properly file an amended complaint in numerous cases. A judge's role is to act as an impartial decisionmaker who cannot provide legal advice or act as a party's attorney.[16] The responsibility for drafting a viable amended complaint lies with Plaintiff. An amended complaint must be limited to only the defendants and claims described above. Plaintiff's request to add any additional defendants and claims to this case is DENIED.

---

[15] Docket 44 at 2.

[16] *Pliler v. Ford,* 542 U.S. 225, 231 (2004); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

8. At Docket 46, Plaintiff filed a motion "to request cost of payment of what it will cost for a copy of my complaint" to send to the defendant's attorney. This motion is GRANTED in part and the Court provides the following information to Plaintiff: copies of documents filed with the Court may be obtained from the Clerk's Office for 50 cents per page.[17] The Court does not allow litigants to accrue copy fees—payment is required at the time a request is made. However, to the extent Plaintiff seeks copies of a complaint in order to serve the amended complaint on a defendant in this case, Plaintiff must not do so at this time. If Plaintiff chooses to file a Second Amended Complaint, the Court will screen it to determine whether it is subject to dismissal or whether there are any plausible claims that may proceed to the next stage of litigation. Only if and when the Court has determined that an amended complaint may proceed beyond the screening stage, will the Court order service of that complaint on Defendant(s). Plaintiff must not attempt to serve any Defendant until the Court so orders.

The Court recognizes that documents filed by self-represented litigants are to be construed liberally, and that federal courts must act with some leniency toward those without legal training. However, a federal court cannot indefinitely

---

[17] Alaska Local Civil Rule 79.2(b). *See also* 28 U.S.C. § 1914, Judicial Conference Schedule of Fees at ¶ 4(a).

entertain or address Plaintiff's repeated and unfounded filings. Plaintiff must not file motions that are meritless, duplicative, or frivolous. Plaintiff is cautioned that non-procedurally compliant filings will not be considered.

If Plaintiff does not file either a Second Amended Complaint or Notice of Voluntary Dismissal within 60 days of the date of this order on the Court's form, this case shall be dismissed under 28 U.S.C. § 1915(e)(2)(B) without further notice to Plaintiff for failure to state a claim. If an amended complaint is dismissed as frivolous, malicious, or for failure to state a claim, and the case is closed, it will count as a strike against Plaintiff. A Notice of Voluntary Dismissal does not count as a strike.[18]

The Prison Litigation Reform Act requires that a self-represented prisoner receive a "strike" when a case he has filed in federal court is dismissed "as frivolous or malicious or fails to state a claim upon which relief may be granted[.]"[19] The "three strikes" provision was "designed to filter out the bad claims and facilitate consideration of the good."[20] Once a prisoner-plaintiff has accumulated three strikes, he is prohibited from bringing any other civil rights cases in federal court without prepaying the full filing fee unless he makes "plausible allegations" that, at the time he filed the complaint, "the prisoner is under imminent danger of serious

---

[18] *Spencer v. Barajas*, 140 F.4th 1061 (9th Cir. 2025).

[19] 28 U.S.C.A. § 1915(g).

[20] *Jones v. Bock,* 549 U.S. 199, 204 (2007).

physical injury."[21] Imminent danger requires an allegation that a harm is "ready to take place" or "hanging threateningly over one's head."[22] It cannot be triggered solely by complaints of past injury or generalized fears of possible future harm.[23] In addition to being "imminent," the alleged danger must also be "both fairly traceable to unlawful conduct alleged in [the] complaint and redressable by the court."[24]

If Mr. Slaikeu elects to proceed with this case, he must also file a renewed Motion for Leave to Proceed without prepayment of the filing fee or pay the full $405 filing fee within 60 days of the date of this order.

With this order, the Clerk is directed to send: (1) form PS01, with "SECOND AMENDED" written above the title "Prisoner's Complaint Under the Civil Rights Act 42 U.S.C. § 1983"; (2) form PS10, Prisoner's application to waive prepayment of the filing fee; (3) form PS09, Notice of Voluntary Dismissal; and (4) form PS23, Notice of Change of Address.

DATED this 18th day of September, 2025, at Anchorage, Alaska.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE

---

[21] 28 U.S.C. § 1915(g); *see also Andrews v. Cervantes,* 493 F.3d 1047, 1055 (9th Cir. 2007).

[22] *Andrews,* 493 F.3d at 1056 (cleaned up).

[23] *Id.* at 1053 ("The exception's use of the present tense, combined with its concern only with the initial act of 'bring[ing]' the lawsuit, indicates to us that the exception applies if the danger existed at the time the prisoner filed the complaint.").

[24] *Ray v. Lara,* 31 F.4th 692, 701 (9th Cir. 2022) (adopting nexus test).